May it please the court. My name is David Corey. I've got the opportunity today to represent Paul Wommer. I'd like to address the court on three issues. We raised a lot of issues in our briefing, but I'm very comfortable with just letting the brief address the issues that are there. But the first issue I'd just like to talk about deals with a very important legal issue, and that's the interpretation of 26 U.S.C. 7201. As the court will recall from the record, Mike Wommer's counsel for Mr. Wommer during the trial phrase raised both a motion and a Rule 29 motion and again at the end of the case to dismiss that count based upon the fact that the tax had been paid and the only record before the court was that the amount that was in dispute was penalties and interest. And essentially, we have a strictly illegal issue on U.S. Code 7201. Now, there's a case in the U.S. Supreme Court, and I'm not going to go into the details of that, but I'm going to talk about a case, United States v. Wright, we cited in our moving papers. And that case has never been overruled. In fact, just out of my anal nature, I Westlawed it again last night. The only distinguishment of that case is the case that we're arguing right here today. There's a reference in Westlaw that said the court distinguished that particular case. The subchapter or chapter 68 of 26 U.S. Code, in particular section 6665, I'm trying to talk fast and not stumble here, that 6671 inherently included some definition of tax as being penalties and interest. But when we look at those provisions, they do not. They specifically say that they're talking about collection, and they both reference that they're talking about chapter 68, not the title. Now, Judge Hurwicz, you recently did a very interesting tax opinion involving something that was put together by Pete Marwick, I believe. And it was the issue in that case was the substance. It was what does the tax code do? It looks at the substance of the transactions. Here, the substance was not the tax. It was penalties and interest. No legal issue at all. I respectfully submit that the district court erred because essentially what it did was it overruled good case law, though it is Fifth Circuit, and this circuit does not have a case on point, and that is that tax means tax. When we go into the Internal Revenue Code, it just goes all over the place. But it's very definitional, and there's serious issues between tax and deficient spend and interest and penalties. And one of the issues is this. And my client made an argument at trial. Finish your point. Yeah. The distinction is this. You can't forgive a tax. You owe a tax or you don't. But the Commissioner of Internal Revenue can waive penalties and interest. That's a significant distinction. Nobody has the opportunity to get rid of a tax. If it's proper tax, you owe the tax. That's what it is. Now, there's mitigating circumstances. There's statutory issues in collection. There's all those other issues. But you owe the tax or you don't. But there are circumstances and penalties in a district court. Now, the court recalled the facts in this case being my client went in, had this interview with an agent. After he paid the tax, she was there and said, hey, we want you to fill out this 433A form, and we're very much interested in collecting the deficiencies in interest. They bantered back and forth is what the record said. She actually asked him, this particular agent, hey, how can I get out of jury duty? I've got a jury summons. My client, maybe being a little bit smart aleck, he said, well, you know, I'm not going to get out of jury duty. I've got a jury summons. I want my interest and penalties waived because Tim Geithner got his waived by reading something in the press, which, in fact, he did get him waived. But who knows what those circumstances are. But the distinction comes down to this. You owe the tax, but interest and penalties, you can get waived. I respectfully submit to the court there's no reason to stray from the United States v. Wright and redefine tax to include interest and penalties. So now let me ask the question I was going to ask before. Is there, in your view then, would there be any statute which criminalized the evasion of the payment of interest and penalties? Could not be under this particular statute. I understand your position about 7201. One way that I might try to read 7201 to see if it's provided for someplace else in the code. It actually is. Is there some other criminal statute that deals with evasion? There are all kinds of other issues that would overlap with that. I'm not prepared to go specifically to the other provisions of the code. I can't, Your Honor. I just don't have that familiar with the code. But not the least of which we have all the issues pertaining to the false return filing, which was another charge, which is essentially filling out improper information provided to the service. There's also wire fraud, communication fraud. There's all kinds of other statutes. But the bottom line of this is there's good public policy to treat tax and penalties and interest different because they are. So there's a couple of statutes which the government cites which says any reference in this title to a tax shall also be deemed to refer to interest. And then there's another one that says it includes additional amounts and penalties. And so you're saying that we shouldn't read them as actually defining tax to include interest and penalties. Can you explain why not? Good question, Judge Acuda. Here's basically what those statutes provide that we're talking about. They are under Chapter 68, which have to do with collection. And if we look at 26 U.S.C. 665, we actually have the language right here in front of me. It says that for purposes of collection, we are going to treat penalties and interest as assessed under this Chapter 68. Then when we look at 6671, we again talk about under this subchapter, which again we're talking about Chapter 68. So is there anything that says in 7201 we shouldn't define tax to include penalties and interest? The problem is it's purely definitional because if it was intended to cover tax for the whole title, the actual language of the statute would have said not referring to the chapter, it would have said to the title. So we should infer because Congress made it specific to that chapter, that doesn't apply to 7201 and that the word tax there excludes interest and penalties. Is that your argument? Exactly. Because exactly what it says. Now, there's a reason for that. When we look at 6665, and the government made a very clever argument, I want to give them credit, in 6671, we are talking about a different process because what we're really talking about is a process of collection of those items, and it's how those items are collected. When this case was tried, which was a very unique case, when the government's primary witness, the lady that came down from Utah and testified, she wouldn't ‑‑ there was a banting going on when the discussion was, well, what did Mr. Wallmer owe as of the middle of 2010? And she said, well, he owed this tax, but he was charged with owing penalties and interest, not tax. Well, we don't even have a system for that, which isn't really true, but the representation on the record was, well, we just lump it all together, that's how the IRS treats it, we collect it that way. We know that's not true because they do waive interest and penalties. We happen to know, quite frankly, that there's a bit of a weakness in the government's case, so when they proceeded to trial, they tried to lump it together. Now, the district court judge made it clear in two references in the case that she was aware it was penalties and interest, and that was the charging indictment. So I respectfully suggest what the government's trying to do is to get the court to rewrite 7201. And again, that's purely a legal issue, and I think it's good public policy where I'd suggest it is to maintain U.S. versus Wright. Well, let me ask you, is Wright still good law in light of the modification of the sentencing note? In other words, Wright relied almost entirely, I think, on the sentencing note provision that since in light of Wright has been amended. Actually, what's interesting is Wright specifically relied on 26 U.S. Code section 6211, 6601E, and 7200 itself based on definitional. That's actually what Wright said. And I know the sentencing guidelines have changed the note, but when we study the actual note, Judge Hurwitz, what we actually see that they're talking about is lumping together personal and corporate tax obligations as opposed to what we're addressing in Wright. It's a very unusual note, and I would say that. It does address that. I found it. I studied it. But it's just an — it's a very unusual note because it doesn't go further than the explanation. And I'd also respectfully suggest this. Guidelines versus case law, I would suggest to the Court that the case law is what controls. Guideline is interpretational. Somebody's taking a look at it. I don't see it as overruling Wright. That would be a decision, obviously, for this Court to make. But it's the rationale here. Because there's a good reason to have a distinction between the tax and the interest and penalties. Can I ask you a question about a different topic? Are you done on this one? I was going to move on. On the question of how much was structured. That's my next question. I think it's clear there were a whole bunch of structuring transactions. And if I can call them the ins and the outs, which is taking the money out and then putting it back in, those were each structuring, were they not? They were. And so if we look at the transactions and add up the amount that was involved in each transaction, the district court was right. But if we just look at the total amount of money that was the subject of the structuring, then it's a lower number. What authority do you have for your position that we ought to look at the lower? Essentially, we start right with the guidelines. If we go to the guidelines, which tells us when we're looking at making an analysis, it really goes to the safe harbor. We actually take a look at the guidelines themselves. And they mention that we define the value of funds as the amount of funds involved in the structuring and reporting conduct. It talks about the amount of funds. Now, the reason it mentions that, and I respectfully suggest goes back to the line of cases, which is part of the record that we filed with the court in our appellate's excerpt. It's actually our document 25. It appears at 346 through 357. It was the findings of the magistrate, Judge Foley, who said when we look at these transactions, we have to go beyond the math of just here's a dollar, here's a dollar, here's a dollar. We have to look at the dollars that were involved. The rationale of this comes down to this, Judge Hurwitz. If we took this, the notion that if we could recycle the dollars every time we walked into the bank. Let's say we just have. And I understand the argument. I'm just looking to see, do you have a case from somewhere? I see no reported cases that I've been able to find that actually address that issue. On the multiplicity issue, the cases actually favor the defendant in this case. So he was convicted of the structuring out, and he was convicted as a separate offense of the structuring in. So why wouldn't, given that he had two offenses, two convictions, no objection to that as being multiplicitous, why does it become multiplicitous when it gets to the sentencing? Here's the distinction. Because the sentencing guidelines actually deal with different concepts. They deal with what is an appropriate sentence as opposed to the statutory concepts. Now, I was in trial counsel, and I'm not completely comfortable with the record, because the trial counsel made the argument they were multiplicitous to start with. Then the government came in and amended indictment and sort of recharged and just broke them up into sets. And no objection to the superseding? No objection. There was a Rule 29 motion that's gray. It may have addressed that. It wasn't very clear. And in fairness to the court, I didn't raise it because I didn't think I could bolster it on the record. I didn't want to waste your time. But what's very clear is when we go into the sentencing guidelines, we take a look at what was the purpose of the sentencing guidelines, and we're going to make these decisions because we're trying to create some equality in sentencing. The notion of the safe harbor was we want to take somebody that's just dumb or somebody that's just, you know, has this weird idea of why they want to move money around. And they take their own money. They move it around because they can freely do it. But they're doing it in a manner to essentially structure. So the safe harbor comes in with the notion that we want to look at the amount of the sums. Now, Judge Ikuta, here's where I just make this argument. If we took the court's determination that these were separate and we add them together, even though it was the same money, we could actually have a situation under the sentencing guidelines where we could have somebody that took $1,000 and did 101 of these transactions. They went in, put one in, put one out, put one out. Why not? How do you distinguish U.S. v. Peterson then? Because that was suggesting that even if they weren't separate offenses, whereas here they were separate offenses, each deposit is an unlawful act. Do you distinguish Peterson? I think the issue with Peterson was, though, as it turned out, the totals were under $100,000. As I recall, they were $99,000. They were done specifically for the purpose of $99,973. So they were actually treated as a single structure. But he said, they said, no problem with applying this enhancement because it was a pattern of unlawful acts. Here, each of his transactions, each withdrawal and each deposit, was structured to avoid the reporting, the bank's reporting requirements. So Peterson says we treat each of those as unlawful acts. Is that distinguishable? It's distinguishable in this particular case because the difference between Peterson and this situation has to be that the sums that were involved in Peterson, you know, I've got a distinction in my trial brief, and I quite frankly am drawn to Blake. And I apologize. Well, maybe you can bring it back when you get back up. Maybe you can notice what it is. I will. I'll save a couple minutes to do that and take a study. But I think it comes down to, you know, when we were talking about the notion of the rule of lenity, we talked about the notion of the pattern of racketeering or pattern of structuring activity or unlawful activity. And I just suggest to the Court there's got to be a common sense to this situation. We have a gentleman who takes his own money. And obviously he's having a dispute with IRS about whether or not he has to pay penalty interest. He throws it on appeals. He doesn't do something that most of us would suggest is appropriate conduct. Former U.S. attorneys should know better. But the bottom line of it is his money, it's the same amount of money, he moves it over. He's moving it for purpose of evasion. I mean, he tells the bank teller, he tells his assistant, I don't want the IRS to put a lien on my account. So the purpose was to avoid paying what he owed, right? Penalty is an interest. I'm having trouble with that. Assume you lose on that. If you win on the first one, we don't get to it. But let's assume you lose on the issue of whether or not this is a violation of the statute, whether or not this is tax evasion. Right. He is, he's doing these things both for an illegal purpose, is he not? He's taking them out in small chunks so there'll be no reporting. And he's putting them in in small chunks so there'll be no reporting. Admittedly so, which he's already done. In other words, he could have done one but not the other. He could have taken all the money and put it under, if he'd taken all the money and put it in a mattress, then I suspect he wouldn't have had the structuring counts with respect to the deposits, right? Theoretically, if it's penalties and interest or tax, I guess he could have charged with tax evasion. I know, but just don't keep making that argument. No, I'll let that one go. You made it already. I'll let that one go. You made it already. But my point is that there's a whole separate criminal conduct course with respect to the deposits, is there not? It's not necessary. You don't have to take money out in small amounts and redeposit it in small amounts. You can hide it in your closet. You can put it under your bed. You can redeposit it in reportable amounts, I suppose. There's nothing inevitable about the second crime from the first, is there? I think that's where the pattern issue sort of comes into play, though, isn't it, in terms of sentencing? Because it's still the same money. So you've used a pattern that only involves $70,000. Right. Or whatever the – And the reason I suggest that, it's a little different than other cases, because in a lot of other cases you may see situations where you have a whole wad of money coming from a variety of sources. Much of it's illegal. This money was his, and it's following a flow. Well, the thing that you had forgotten for a moment, the statement in the sentencing guideline 2S1.3B2, comment 3, that a pattern of unlawful activity means at least two separate occasions of unlawful activity, which there were here, involving a total amount of more than $100,000. There was only $72,000 ever involved. That's it. Thank you, Your Honor. That was it. I appreciate it. And that's the best argument I can make. It is. And believe me, it's much appreciated. Now, I've got a couple minutes. I was going to try to save a couple, but rather than do that, I'd just like to make my last point. When we got over to – there's some interesting facts in this case. And I'm sure the Court saw we had a pre-sentence report. The pre-sentence investigation said no obstruction of justice. But the judge found in the sentencing process on her own that there was an obstruction of justice because Mr. Wallmer went to trial and he asserted this diminished mental capacity defense. But there was evidence to support it. Even the government's experts said he suffered a frontal lobe injury. It did leave him some brain damage. The issue, of course, from a fact question was, was it a diminished capacity defense? The Court rejected it. The Court's entitled to reject it. But for purposes of taking a look at what happens as far as him going in and saying, I'm – this is – this is a reason for what I did, good, bad, or indifferent, it's certainly a reason. It's certainly brought in good faith. There was evidence there. The other thing was that he presented a bank statement for about $1,400 was one of his accounts. And the judge was offended by that. She said, well, I think that shows he was trying to obstruct justice. And I just suggest to this, when we get into this situation, this is one of the most unique cases this Court will ever see. This man, when he was contacted by the IRS agent that was investigating Agent Rice, makes an appointment with an AUSA, walks in with Agent Rice. He tells him everything. He tells him to the nit, to the gnat, gives him the documents, tells him exactly what went on. He then testifies to what exactly went on. His only issue as to non-acceptance of responsibility or, quote, obstruction at best were his defenses that he was entitled to make. The case law suggests very strongly that you shouldn't be penalized if you have legitimate issues. His issue on 7201, whatever this Court rules on, was a legitimate legal issue to go to trial on. He raised it, he preserved it. His issue as to diminished capacity as to whether or not he was entitled to some sentencing adjustment was legitimate. Even the government's experts said he suffered a frontal lobe injury. His issue as to the producing the bank statement did show that one of his accounts, though he had many, was certainly in the $1,000 range. So, I mean, these are all consistent with somebody going in, presenting legitimate defenses, but fully accepting responsibility. I mean, his transcript made it clear he accepted. He told, he, right from the get-go, he said, I did these things. He had reasons for them. He acknowledged every act that was involved. The government wasn't put on an extra burden. Last thing is on the forfeiture. The government suffered no harm. Absolutely. Item 4 of that, the key case, which is Bajikajian, that's the key issue here. The government simply didn't suffer any harm. They got their tax. It was his money. For them to go ahead and say now we're entitled to all the money that we have to pull out of the other account is, it's just a, it's an excessive fine by legitimate amendment. Anyway, thank you very much. All right. Thank you. Thank you. In this matter, the district court correctly found that the tax involved under 7201, the penalties and interest by statutory definition. So he says that statutory definition applies only to, I think he said Chapter 68 for collections and doesn't apply to the chapters 7201 is in. Is that incorrect? Yes, Your Honor. That would be incorrect. And the district court correctly found it was incorrect because it's the other code sections under the tax code specifically refer to any reference in this title, Title 26, that refer to penalties and interest, also refer to the tax. So it's all inclusive. And the only exception it carves out, Your Honor, pertains to situations where there are tax deficiencies under the United States tax court proceedings. So that would be the distinction in this case, that the district court, which this court reviews de novo, correctly found. So by statutory definition, penalties and interest are included under the definition of tax. What statute are they included? Thank you. The statutes, Your Honor, that are set forth in the government's briefing, which were provided to the district court, are 26 U.S.C. 6671. Which says? Your Honor, that says any reference in this title to tax imposed by this title shall be deemed also to refer to the penalties and liabilities provided by this 26 U.S.C. 6601. Your Honor, F1, any reference in this title except subchapter B of chapter 63 relating to deficiency procedures to any tax imposed by this title shall be deemed also to refer to interest imposed by this section on such tax. So therefore, the other one that defines penalty and interest, you think, even though it only says chapter, is automatically taken to refer to the rest of the title? If I understand, Your Honor, correctly, yes, Your Honor, only to tax deficiency proceedings under the United States. Right. Yes, Your Honor. Can you turn to how much money was involved in this scheme? I think Judge Beyer read the relevant language. And it seems to me that only $72,000 was involved. He may have committed lots of crimes with that $72,000 or 74 or whatever it is. But he didn't – that's the amount of money involved. Why should the amount of money involved be doubled here, in effect? It's not quite doubled because the deposits don't exactly match the withdrawals, but assume that they do. Why should we count it twice? Thank you, Your Honor. Your Honor, the amount of money involved – Your Honor is correct. The finite amount of money involved was the $70,700 or $70,500 amount. Yeah. There in that ballpark. Again, I heard the term earlier this morning. It's close enough for our work, 70 – you can refer to $70,000. I apologize for not having that exact figure. But Your Honor is correct. There is a finite pool of money. The government concedes that. However, the government's position is the district court did correctly interpret the guidelines, subject to de novo review by this court, in finding that the amount of money involved in the scheme, if you will, to structure the funds, both, as I believe Your Honor previously mentioned, the in and out, if you – Well, I know that's your position, but Judge Bea said before in his lifeline, involved sounds like the amount of money that was out – that was involved in the scheme. And it's hard for me to see that more than $70,000 was involved in the scheme. Suppose instead of doing it once structuring out of his bank account and once structuring it into the Secretary's bank account, he'd done it four times. Would that mean there's $280,000 involved? Suppose he'd done it six times, $450,000 involved? There's still the same amount of money. And thank you, Your Honor. Your Honor, there is a cap on the guideline. It just speaks, as I understand the guideline, just $100,000 threshold. It is the same amount of money. However, the government's position is that the guideline captures the harm. That's the government's position. Now, do we have any cases that interpret that guideline to count the inside going in and going out as separate amounts for purposes of involving the money? Your Honor, the only case I'm familiar with is the Peterson case out of the Fourth Circuit where it was a finite amount of money, just over $101,000. However, the guideline captures the harm done, I would argue, to the court. As Your Honor said earlier, he could have just withdrawn the money without struggling. I understand why that's criminal conduct. I don't have any doubt that he committed two different types of criminal conduct. But my question is still the word involved in its normal parlance would be how much money was involved in the scheme. And if you stopped everybody in the street and described the scheme, they would say $70,000, wouldn't they? So why are we as judges and lawyers going to count it twice? The word involved. I have to interpret the word involved. Thank you, Your Honor. Or involving, I think, is the guideline's language. Thank you, Your Honor. It is a term of art, I would submit. However, the guideline application note previously referenced where the term value of funds, that is defined, and that pertains to the calculation in the base offense guideline when you determine how much money, the finite. I wanted to ask you about that. There is a calculation here for the base offense guideline that it's the double amount, right? That's correct, Your Honor. And that wasn't objected to? That's correct, Your Honor. Does that affect us here in some way? I think the court can rely upon that in determining there was in both the in and out, or the out and in, there was $138,000. Is the language the same? It appears to be. What's the language that deals with the base offense? Value of funds, Your Honor. Application note one, for purposes of this guideline, value of the funds means the amount of the funds involved in the structuring or reporting conduct. The relevant statutes require monetary reporting without regard to whether the funds were lost. The court found that applied, and there was no objection to that by the defendant? That's correct, Your Honor. The base offense level was increased because of the amount, as I recall, exceeding $138,000 and some change. So the amount of money involved is $138,000 because the defendant, there was deception going out and in, and it made it more difficult for the government arguably to have detected this clandestine activity. And I think that's the, I would submit that's the harm that's captured with the guideline and the monetary threshold of over $100,000. The word involved is also used in that statute, or pardon me, in that guideline instead of involving. Yeah. Yes, Your Honor. It says involving. Yes, Your Honor. With respect to the. Well, we get to the forfeiture. Yes, sir. Now you're clear only $70,000 is involved because that's all you're seeking to forfeit, right? Absolutely. Is that inconsistent? Is that inconsistent? Why aren't you forfeiting $140,000? Your Honor, that's a good question, but that's all the government was able to seize in this matter. Well, it's because it's the amount of money that you thought was involved in it, wasn't it? Yes. So if he had, let's say he had taken out the $70,000 from his account in the structured and given, put the money under his bed or given the money to a friend and gotten different dollars back from the friend and put that in, so could the government have gone after the $70,000 he had taken out that was held by the friend plus the different dollar bills that he had put into the secretary's account? So then it would have been $140,000 because you have different dollar bills? If there had been additional funds, yes, Your Honor, that had been part of the instrumentality of the criminal activity that could have been identified through the investigation, yes, Your Honor, I would submit that the government could have sought forfeiture before the district court. Of the full $140,000, so taking the $70,000 back from the friend. If the government was able to, yes, Your Honor, yes, I would agree with that. So it does make a difference what dollars they are. In other words, here, the specific dollars that were taken out of one account were put in the other account and you say the government can only get $70,000. But if the specific dollar bills that had been taken out were given to the friend and he got different dollar bills from the friend in the same amount, then he couldn't have gotten and put them in. Then he could have gotten the whole $140,000. But $70,000 isn't just $70,000. So the government focuses on different dollar bills. Is that right? For two different purposes, yes, Your Honor. For the seizure purposes versus the guideline purposes, in that context, yes, Your Honor, I would concede that. Well, let's go back for a second. Let's assume the statute prohibited the structuring of transactions in diamonds as opposed to dollars and that you had to report every time you took a diamond out of a safe deposit box and put one in. And somebody violated the statute. They took out a diamond without reporting it, put one back in without reporting it. How many diamonds would be involved? I would submit that one for each infraction, whether or not it's a chargeable offense. I know that's what you're submitting. It's just I've got a little bit of trouble with it. I mean, it's if we change these dollar bills to something else, hogs, diamonds, and we ask later how many hogs were involved, we'd say one. So what is it in the nature of these dollar bills that turns them into two? Your Honor, I think it's the harm each instance that this repeals. No, I understand why each act is criminal. You're making a good argument by why each act is criminal. But the statute says involving. And I guess, you know, it's hard for me if I change them into hogs or diamonds to say that it involves more than one hog or more than one diamond. So why does it involve more than $70,000? Your Honor, to answer, not to indirectly or too indirectly answer, Your Honor said each offense is criminal. Each offense was not charged as each time he did it was not charged as a criminal offense. No, I understand. I understand that. But I understand that each of the acts were criminal. Were unlawful. Unlawful. They refer to them as unlawful activities. Unlawful. It's a simple reporting statute. The clandestine aspect of the activity wherein he evaded the reporting requirement, which made it more difficult to detect, it's something he didn't have to do. His secretary, there's evidence in the record, was concerned about depositing the money in her account. He instructed her, if you do this in increments less than $10,000, you won't have to worry about the IRS imposing a tax on you. So it's the clandestine, surreptitious nature of it is the harm that's captured by the guideline. And that's what I would submit is being addressed in this. Mr. Reed, we've spent some time massaging the term involving as opposed to the term involved. If the sentencing guideline is somewhat ambiguous, should we not apply the rule of lenity? If it were ambiguous, Your Honor, but I would submit that under the de novo review that it's not ambiguous, that you can examine the finite, not the finite, but the panoply of activity involved here to find that it's unambiguous. And when it's unambiguous, the rule of lenity is not applicable. So I would submit that would be the correct analysis that should be applied. Could you, you had started to address the, and I'll murder the name, Bhajah Khajian argument, the Eighth Amendment argument in the case. And in that case, as I understand it, the Supreme Court said, look, if the if the harm is only non-reporting, then it's not the total amount of money that was not reported. It's some lower number that you ought to be able to forfeit here. You've got an additional harm, I suppose, which is the tax evasion. But we can measure that harm. The tax evasion. He owed you $14,000. So why shouldn't the why shouldn't the penalty here be something like $24,000 as opposed to 72 to $10,000 for the non-reporting, if you will, and much more non-reporting in Bhajah Khajian, it's 350,000 bucks. Why? So why shouldn't it be like 10 or 15,000 bucks for that? And maybe the $15,000 that was evaded. Why should it extend to the whole amount? Thank you, Your Honor. Your Honor, this Court has found that they're interpreting the I'm not going to be able to pronounce it correctly either. The same case you're referring to, interpreting that case, this Court has found that there is a four-part test, the nature and extent of the crime, whether it involved illegal activities, other penalties that may be imposed and the extent of the harm caused. Here, the district court, using the measure that this Court has given to her to apply, specifically invoked that case and said on the record it had considered the four-part test, found that it was not a grossly disproportionate. That's the standard, Your Honor. It doesn't have to mirror the amount of money involved in the offense. This is an alleged constitutional violation, right, an Eighth Amendment excessive fines clause. So we're not just looking at evaluating the guidelines. We're looking at whether the Constitution is offended by this forfeiture, correct? Yes, Your Honor. That is correct, whether it was grossly disproportionate to the offense in this matter. And there's another case I cited in my brief, United States v. Wallace, 389 F. 3rd, 483 out of the Fifth Circuit, where if the forfeiture is within the range of fines prescribed by Congress here, the range of fines is $500,000, the district court found, then there's a presumption it's reasonable. Here, there's a fraction of that. That's not a trivial amount, I'm not suggesting, but it's certainly within the ---- Well, it's not a fraction because the range of fines allowed here would have been in the area of $70,000, right? Yes. So it's not a fraction, but it's the whole. Yes, Your Honor. If it hadn't been for the district court finding that the fine it could have imposed would have been $500,000, it only imposed, I think, a $7,500 fine. So there's a presumption that it's constitutional under the law. Can I ask you to go back to the original point? Do you agree that if we adopt your interpretation of 7201, we will be in conflict with Wright, or do you think that there's a way to distinguish Wright? I think there's a way to distinguish Wright, Your Honor. And I would suggest something that the Court has already, I think, wanted to respond to this morning, suggested that Wright, I think Your Honor actually suggested it, Wright pertained to a ---- it hung its hat on the interpretation of, I believe, 2T1.1 of the sentencing guidelines, where at the time it's been revised, the guidelines prohibited an increase and from encompassing penalties and interests in the guideline calculation, and that's been revised. Wouldn't it be a strange thing? I think your opponent tried to say this, although he was ---- he had a lot of things to cover. Wouldn't it be a strange thing to rely on the sentencing guidelines to define a statutory violation? Congress does the statutes and somebody else does the sentencing guidelines. In other words, could the nature of a statutory violation change because the sentencing guidelines change? Your Honor, I'm not quite sure how to address that. It does seem a little ---- I wasn't either. It seems a little bit odd, but I'm not one to question the Fifth Circuit and its interpretation. But that could be wrong or right. I'm just ---- Well, no other circuits followed it in the 13 years since it's been ---- since that case was published. And I would submit that the reasoning in Wright, I think, is something that the government put before the district court, was not something that was actually relied upon in the case. It was dicta because the court ---- the district court actually found that even if it ---- the taxes and penalties and interest are ---- can't be considered as part of the tax, it doesn't really apply in this case because the way the IRS calculated his taxes, the first in, first out rule, so to speak. And it was dicta. It didn't change the analysis by the Fifth Circuit. So that would be another way to distinguish it, and no other courts relied upon it. And just the plain meaning of the statute under Title ---- the statutes I've referred the court to under Title 26, where the definition of tax under this title, under the multiple statutes I've referred to, includes penalties and interest. Your Honor, I see my time is 40 seconds. Unless the court has ---- I know there are a myriad of issues brought before the court. Unless you have any other specific questions, I would submit it and ask the court respectfully to affirm the conviction and sentence in this matter. Thank you very much. I believe the appellant has exhausted his time, so the matter will be submitted.
judges: BEA, IKUTA, HURWITZ